UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDY ESTRELA NEVES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BENCHMARK RECOVERY, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-CV-01759-LHK<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 19 |

Plaintiff Sandy Estrela Neves ("Neves") brings this motion for default judgment against Defendants Benchmark Recovery, Inc. and Jeffrey Lasnier (collectively, "Defendants"). *See* ECF No. 19 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Neves's motion for default judgment.

**I.　BACKGROUND**

Neves alleges that she incurred a financial obligation on a consumer credit account issued by Bank of the West. ECF No. 1 ("Compl.") ¶ 12. On or around April 4, 2012, this debt "was consigned, placed, or otherwise transferred to" Baseline Financial Services, Inc. ("Baseline"). *Id.* ¶ 13. On December 20, 2012, Baseline filed suit against Neves in Santa Clara County Superior Court in order to collect upon Neves' debt. The state court awarded judgment in favor of Baseline

on June 24, 2013. *Id.* ¶¶ 15–17.

On April 18, 2014, Defendant Benchmark Recovery, Inc. ("Benchmark Recovery") sent a collection letter to Neves. *Id.* ¶ 20; ECF No. 1-3. This letter was signed by Robert Thorn, which Neves alleges is an alias Defendant Jeffrey Lasnier ("Lasnier") "use[s] . . . in his debt collection activities." Compl. ¶ 33; ECF No. 1-3. According to Neves, this collection letter "fail[ed] to state the true and correct amount of [Neves'] debt," "fail[ed] to state the name of the then current creditor," and "falsely stat[ed] . . . the interest due on the debt." Compl. ¶¶ 26–30. On April 17, 2015, Neves filed the instant complaint, which alleged violations by Defendants of the federal Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). Defendants were served on May 11, 2015, but did not file a responsive motion or pleading. On June 3, 2015, Neves filed motions for entry of default against both Defendants, ECF Nos. 13 & 14, and the Clerk entered default against Defendants on June 10, 2015, ECF Nos. 15 & 16. On September 4, 2015, Neves moved for default judgment against Defendants. Defendants did not file an opposition.

## II.  LEGAL STANDARD

After entry of default, the Court may enter default judgment against the defaulting party. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) ("The district court's decision whether to enter a default judgment is a discretionary one."). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court [first] has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

If the Court finds that a matter is within the Court's jurisdiction, the Court may then consider a number of factors in deciding whether to enter default judgment. These factors include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7)

2
Case No. 15-CV-01759-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (internal quotation marks omitted). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### III. DISCUSSION

#### A. Jurisdiction

##### 1. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over Neves' FDCPA claim under 15 U.S.C. § 1692k(d), which states that "[a]n action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy . . . within one year from the date on which the violation occurs." Neves filed her complaint on April 17, 2015, which was within one year of Defendants' alleged violation on April 18, 2014. The Court has supplemental jurisdiction over Neves' Rosenthal Act claim under 28 U.S.C. § 1367.

##### 2. Personal Jurisdiction

"Personal jurisdiction over a nonresident is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 830 (9th Cir. 2005). Because this Court is located in California, the applicable long-arm statute is California's. That statute, Cal. Civ. Proc. Code § 410.10, "allows courts to 'exercise jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States.'" *Id.* Accordingly, so long as the requirements of the Due Process Clause of the United States Constitution are satisfied, this Court may exercise personal jurisdiction over Defendants. *See Panavision*, 141 F.3d at 1320.

"Due process requires that a defendant have minimum contacts with the forum such that

3

the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir. 1989) (internal quotation marks omitted). "Personal jurisdiction may be founded on either general jurisdiction or specific jurisdiction." *Panavision*, 141 F.3d at 1320. The Ninth Circuit has established the following test for analyzing claims of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The Court finds that the complaint alleges facts sufficient to establish specific jurisdiction over Defendants.

Although Defendants are based in Washington state, Compl. ¶¶ 9–10, Defendants contacted Neves via collection letter at Neves' California address. Defendants have thus performed an act that "purposefully avails [Defendants] of the privilege of conducting activities in" California. *Fred Martin*, 374 F.3d at 802; *see also Weakley v. Redline Recovery Servs., LLC*, 723 F. Supp. 2d 1341, 1344 (S.D. Cal. 2010) (finding specific jurisdiction on FDCPA claim because Defendants, located in Texas, contacted Plaintiff at Plaintiff's workplace in California). Neves' claim also "arises out of or relates to [Defendants'] forum-related activities." Finally, the Court finds that exercising specific jurisdiction would be reasonable: Neves resides in Santa Clara County, California, and Defendants have not argued that this matter should be litigated elsewhere.

### B. Claims for Damages

Having determined that Neves has sufficiently pleaded subject matter and personal jurisdiction, the Court turns next to Neves' substantive claims and whether, pursuant to the *Eitel* factors described above, default judgment is appropriate.

4
Case No. 15-CV-01759-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

As stated above, the *Eitel* factors are as follows: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72. The Court shall begin by reviewing the sufficiency of Neves' complaint and the merits of Neves' claims, which correspond to the second and third *Eitel* factors. The Court shall then consider the remaining factors and whether these factors counsel in favor of or against default judgment.

### 1. FDCPA

Individuals may bring suit against any debt collector who fails to comply with the FDCPA, and may claim up to $1000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(A). The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692k(a)(6). In determining "the amount of [statutory] liability [under the FDCPA], the court shall consider . . . the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1).

Neves contends that Defendants are debt collectors who failed to comply with the FDCPA, and requests that the Court award her $1000 in statutory damages. In the complaint, Neves alleges that "[t]he principal business of [Benchmark Recovery] is the collection of debts using the mails and telephone" and that Benchmark Recovery "regularly attempts to collect debts alleged to be due another." Compl. ¶ 9. The Court finds these allegations sufficient to establish Benchmark Recovery as a debt collector under the FDCPA. In addition, although "[t]he Ninth Circuit has not yet decided the question of whether an individual employee of a debt collection company may be held personally liable as a 'debt collector' under the FDCPA for acts committed within the scope of employment," "all . . . district courts in the Ninth Circuit[] have concluded that employees can

be held personally liable under the FDCPA." *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009). Accordingly, the Court finds that the complaint also sufficiently alleges that Lasnier was a debt collector under the FDCPA.

Having determined that both Defendants are debt collectors under the FDCPA, the Court turns next to Defendants' alleged non-compliance to determine, under the factors set forth in 15 U.S.C. § 1692k(b)(1), the extent of Defendants' financial liability.

### i. Frequency and Persistence of Non-Compliance

Neves argues that Defendants violated the FDCPA in four ways. First, the collection letter that Defendants sent to Neves lists "Bank of the West" as the current creditor of Neves' debt. ECF No. 1-3. Neves contends, however, that Neves' debt was assigned from Bank of the West to Baseline in April 2012. ECF No. 1-1. Second, the letter provides $3,014.08 as the principal and $2,151.62 as the interest on Neves' debt. ECF No. 1-3. Neves contends, however, that Baseline was awarded a judgment of $4,804.67 in Santa Clara County Superior Court, which included a damages award of $2,964.08 and a prejudgment interest award of $894.98. ECF No. 1-2. Third, the letter lists an 18% interest rate. Under California law, however, "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Cal. Civ. Proc. Code § 685.010. Fourth, Neves contends that Defendants failed to provide adequate notice of Neves' debt, pursuant to 15 U.S.C. § 1692g.

Although the Court finds that Defendants did falsely represent "the character, amount, or legal status" of Neves debt, in violation of 15 U.S.C. § 1692(e)(2)(B), and that Defendants failed to provide adequate notice, in violation of 15 U.S.C. § 1692g, these violations do not demonstrate frequent and persistent non-compliance. All of Defendants' alleged violations stem from a single incident: the April 18, 2014 collection letter. On this point, the Court notes that this is not the first time that Neves has brought a FDCPA action before this Court. In *Neves v. Kraft*, 2013 WL 2154107, *3 (N.D. Cal. May 22, 2014), Neves also alleged violations of the FDCPA that stemmed from a "single occurrence of wrongdoing." In *Kraft*, this Court limited Neves' recovery to $350, with the Court finding that the frequency of noncompliance factor weighed against Neves' request

1  for $1000 in statutory damages.  *See also Silva v. Jason Head, PLC*, 2010 WL 4593704, *5 (N.D.
2  Cal. Nov. 4, 2010) (limiting damages to $500 because of infrequent non-compliance).
3  Accordingly, the Court finds that the frequency and persistence of Defendants' non-compliance in
4  the instant case weigh against Neves' request for maximum statutory damages.

### ii. Nature of Non-Compliance

Turning to the nature of Defendants' non-compliance, the Court notes that the collection letter does not threaten litigation against Neves.  In fact, the letter does not even mention what will happen if Neves fails to respond—the letter only "ask[s] [Neves] to respond to me and my staff and maintain control of the direction your account takes." ECF No. 1-3.  The Court finds that this factor weighs against granting Neves maximum statutory damages.

In *Kraft*, Neves received a single litigation document directly from a debt collector.  The debt collector should have sent this document to Neves' counsel instead.  As the Court noted, this sort of non-compliance in *Kraft* was less severe than the non-compliance in other FDCPA cases, where plaintiffs alleged significant intimidation by the debt collector against the debtor. 2013 WL 2154107, *3.  Likewise, in the instant case, Defendants' non-compliance did not involve threats or intimidation against Neves.  Thus, the Court finds that the single collection letter sent by Defendants does not constitute significant or severe non-compliance under the FDCPA.

### iii. Extent to Which Non-Compliance was Intentional

Finally, with respect to Defendants' intent, the complaint alleges that "Defendants' acts . . . were done intentionally with the purpose of coercing Plaintiff to pay the debt." Compl. ¶ 43.  The Court finds this stray allegation insufficient to support a finding of intent.  Given Defendants' position as debt collectors, it is entirely plausible that Defendants' errors were a result of an unintentional mistake in Defendants' records.  Indeed, the sparseness of the record makes it impossible to tell whether Defendants acted intentionally or unintentionally.

In sum, the Court finds that the frequency and persistence of Defendants' non-compliance, the nature of Defendants' non-compliance, and the extent to which Defendants' non-compliance was intentional all weigh strongly against Neves' request for $1000 in damages.  Although the

United States District Court
Northern District of California

second and third *Eitel* factors—the merits of plaintiff's claims and the sufficiency of plaintiff's complaint—do weigh in favor of entering default judgment, these factors do not counsel in favor of awarding Neves maximum statutory damages. Accordingly, the Court awards Neves $250 in damages under the FDCPA.

### iv. Remaining *Eitel* Factors

The Court turns now to the remaining *Eitel* factors. With respect to factor 1, the possibility of prejudice to the plaintiff, Neves will likely have no recourse if default judgment is denied. Turning to factor 4, the sum of money at stake, the Court finds that a $250 award under the FDCPA weighs in favor of entering default judgment. Next, with respect to factor 5, the possibility of a dispute concerning material facts, the facts here are readily verifiable through records submitted by Neves. Regarding factor 6, whether default was due to excusable neglect, Neves has provided sufficient proof of service, and Defendants have never responded or filed papers on Defendants' behalf. Finally, factor 7, the strong policy favoring decisions on the merits, is inapplicable, as Defendants have not filed a responsive motion or pleading. Accordingly, the Court finds that no other *Eitel* factors preclude entry of default judgment.

### 2. Rosenthal Act

Neves has also requested a $1000 in statutory damages under the Rosenthal Act, which provides that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j [of the FDCPA], inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." Cal. Civ. Code § 1788.17. This cause of action under California law essentially mirrors the cause of action provided under the FDCPA. *See, e.g.*, *Gold v. Midland Credit Mgmt., Inc.*, 82 F. Supp. 3d 1064, 1078 (N.D. Cal. 2015) ("The Rosenthal Act requires compliance with the FDCPA and a debt collector that violates the FDCPA also violates the Rosenthal Act."). In addition, the Ninth Circuit has determined that "[t]he Rosenthal Act's remedies are cumulative, and [are] available even when the FDCPA affords relief." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1069 (9th Cir. 2011). Accordingly, the Court denies Neves' request for $1,000 in statutory damages

8

Case No. 15-CV-01759-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

under the Rosenthal Act and, consistent with the Court's analysis of Neves' FDCPA claim, instead awards Neves $250 in statutory damages under the Rosenthal Act.

### A. Attorney's Fees and Costs

The FDCPA allows plaintiffs to recover reasonable attorney's fees and costs. *See* 15 U.S.C. § 1692k(a)(3). "District courts must calculate awards for attorneys' fees using the 'lodestar' method." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Id.* (internal quotation marks omitted). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Id.* A "district court has a great deal of discretion in determining the reasonableness of the fee." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (internal quotation marks omitted).

Fred Schwinn ("Schwinn") and Raeon Roulston ("Roulston"), counsel for Neves, state that they performed 6.1 and 5.7 hours of work, respectively, on behalf of Neves. Mot. at 12. Schwinn and Roulston request $500 per hour and $400 per hour for their work, respectively, for a total of $5330.30 in attorney's fees. *Id.* In separate actions, U.S. District Judge Beth Freeman and U.S. District Judge Vince Chhabria recently found Schwinn's rate of $500 per hour to be reasonable in light of Schwinn's many years of experience in this legal area. Judges Freeman and Chhabria also found Roulston's rate of $400 per hour to be reasonable. *See Martell v. Baker*, 2015 WL 3920056, *2 (N.D. Cal. June 25, 2015); *Bentkowsky v. Benchmark Recovery, Inc.*, 13-CV-01252-VC, ECF No. 109 (N.D. Cal. Mar. 24, 2015). Schwinn has also submitted a declaration from a lawyer of comparable skill which attests that Schwinn's $500 per hour rate is fair and reasonable in the San Francisco Bay Area. *See* ECF 19-7. Further, Defendants do not contest the reasonableness of Schwinn and Roulston's hourly rates. Accordingly, the Court finds Schwinn and Roulston's hourly rates of $500 and $400 to be reasonable.

The Court also finds the number of hours billed by Schwinn and Roulston to be

9

Case No. 15-CV-01759-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

reasonable. A substantial majority of these hours were spent drafting the complaint (3.5 hours) and drafting the motion for default judgment (5.4 hours). The Court notes that these hours are higher than the hours spent by the same counsel on behalf of the same plaintiff regarding the same causes of action in another case before this Court. *See Neves v. Kraft*, 2013 WL 2154107, *3 (N.D. Cal. May 22, 2014). In *Kraft*, the same counsel spent only 2 hours drafting the complaint and only 4.5 hours drafting the motion for default judgment. Nonetheless, the factual issues in this case are somewhat different from those in *Kraft*, and Defendants have failed to challenge Schwinn and Roulston's hours. Accordingly, the Court finds the hours reported by Schwinn and Roulston to be reasonable. The Court therefore awards counsel for Neves $5330.30 in attorney's fees.

Neves also requests $741.72 in costs. Mot. at 12. A substantial majority of this amount is for filing ($400) and process server fees ($337.50). The Court notes that these process server fees are significantly higher than those incurred in *Kraft*, where the Court awarded a total of $79 in process server fees. Unlike in *Kraft*, however, Defendants in this case are out-of-state entities, which could have made service more expensive. Under these circumstances and based on the record before the Court, the Court finds these process server fees to be reasonable. Accordingly, the Court awards $741.42 in costs to Neves.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment. The Court awards Neves $500 in damages, $741.42 in costs, and $5330.30 in attorney's fees. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: November 11, 2015

_____
LUCY H. KOH
United States District Judge